The opinion of the court was delivered by
Manning, C. J.
In September 1873 Katharine Sier, widow, executed her note for six hundred dollars with eight per centum interest from maturity, payable one year after date. At the same time she gave a mortgage to the defendant'Yogel to secure its payment on two lots in this city. Both the note and mortgage are signed by her as written *39 above, but her name is written by the notary Kdtharina Kramer widow of Bernard Sire.
In May 1876, she executed her note to the plaintiff Swan for •$1,380.00, and secured it by mortgage on one of the -same lots. This note and mortgage were signed by her in the same way .as the others, and the notary describes her as Katharina Kramer widow of Bernard 'Sier. The signatures to both of the notes, and both of the mortgages, •are the same. The notary in the first mortgage has written her name Sire, and in the second Sier. Both mortgages were recorded on the day they, were executed.
Swan foreclosed his mortgage ih Oct. 1877, and on the 19th. .of that •month bought the mortgaged property at sheriff’s sale. The certificate of the recorder of mortgages, furnished and read at this sale, made no mention of the Vogel mortgage, and the Swan mortgage was certified •as the sole incumbrance on the property, except the drainage and other city taxes.
A few days after this sale, Vogel took out executory process to fore-close his mortgage, and it was injoined by Swan. That is the present suit. The grounds of injunction are, that Vogel and Mrs. Sier fraudulently concealed from Swan the existence of the Vogel mortgage, and that he could not obtain information from the mortgage office of its existence because it was not inscribed therein in her real and proper name Sier, but in another and different name, viz Sire, and that the certificate of the recorder could not be otherwise than it was, as Swan’s mortgage was the only one resting upon the property of widow Sier.
The testimony does not sustain the allegation of concealment. Kuhn, a witness, says he spoke to Swan at th.e sale about the Vogel •mortgage, and Kramer swears that Swan knew of it shortly after its execution, and before the date of his own mortgage, while Mrs. Sier states that she told Swan of it the day she executed it. Swan is her son in law, and at that time she lived at his house. They have since quarreled. She also states that she received only two hundred dollars from "Swan for her note of near fourteen hundred dollars, while Swan swears •that he paid her; or paid for her, $525 at one time, and $800 at another. We attach no importance to that feature of the case.
Mr. Onorato, the deputy sheriff who made the sale, says he read the recorder’s certificate aloud, and some one mentioned that there was a mortgage upon the property previous to Swan’s, and he remembers Mr. De Armas another deputy who was present replied, if there was one, it was not inscribed, or if it was inscribed, the' recorder had omitted it -in his certificate.
Mr. Richardson, the deputy of the recorder of mortgages, says the sheriff asked him for a certificate of the mortgages against Katherine *40 Kramer, and that in one record she is described as the widow of Bernard Sier, and in the other as Sire, and he certified the existence of the former — that these two mortgages are indexed in these names, but if there had not been an error in the “research,” the Vogel mortgage would have appeared on the certificate. It appears that when a search •of the mortgage records is made for the purpose of giving a certificate,, a memorandum is made of the mortgages appearing against the name of the mortgagor, and these memoranda, which are known in the office--as “researches,” are preserved. So that afterwards when another certificate is wanted of mortgages recorded in or against that name, reference is, had to the “research” to ascertain what mortgages were recorded up to that date. The witness says, there was an omission in the- “ research ” in the present instance, which had been made by another and former deputy, and that he discovered that omission after the sale.. Of course he must refer to the Vogel mortgage as the omission, since-that was the only one besides Swan’s.
The counsel for the plaintiff insists that the law requires an index: of the mortgage books' to be kept; and the recorder is, and must be-guided by that in preparing the certificate. But that would be substituting the index to the mortgage, and is tantamount to saying that although the' mortgage may be recorded in the proper book, it is of no-avail if not indexed. The index is ordered by law to be kept for convenience, but it is not a part of the mortgage record. Certainly it does-not take the place of the record in the book, and supersede it.
There was enough in the mortgages as recorded to indicate the-identity of the mortgagor in each. In both of them she was described as Katherina Kramer, widow of a man whose first name was Bernard and whose family name was spelled differently only by the transposition of two letters. The deputy recorder, who gave the certificate, impliedly admits that if the mortgage book had been consulted instead of the “ research,” this identity of description would have caused him to put the Vogel mortgage on the certificate.
But the real question is, can the recorder deprive a mortgagee of his rights under a recorded mortgage by omitting it from the index, or by indexing it improperly, or by omitting it from his certificate? It is-unnecessary to say that he cannot. Vogel’s mortgage was recorded. The property was described in it. A part of it was the same as that-mortgaged to Swan. The name was mentioned with descriptive particularity, and Vogel cannot lose his rights under the mortgage because-of a mistake in the officer who gave the certificate.
‘ Independent of this, Swan knew of the prior mortgage. The remark made by a bystander at the sale, and the reply of the officers-making the sale, must have reminded him of the fact, of which he had *41 been apprised before, i. e. that there was a previous mortgage, and Yogel held it. He bought with his eyes open.
We have not noticed another ground of the injunction, that all interest had been paid on Yogel’s note up to October, 1878, and its payment had been postponed till then, because it is not proven, or rather it. is disproved.
The defendant prays for damages. We do not feel inclined to inflict; them. Swan’s injunction does not appear to have been wantonly provoked, and the probabilities are that he will lose his debt. The lower judge dissolved the injunction with costs only.
The judgment of the lower court is affirmed.